# Presidential Appointment of Justice Robert Jackson to Prosecute Axis War Criminals in Europe

The President may appoint Justice Jackson as United States prosecutor of the Axis war criminals in Europe.

July 2, 1946

LETTER FOR THE UNITED STATES ATTORNEY
NORTHERN DISTRICT OF NEW YORK

I want to thank you for calling to my attention the criticisms which have been made in your region concerning the President's action in appointing Mr. Justice Jackson as United States prosecutor of the Axis war criminals in Europe.

As I told you on the telephone, I think such criticism is entirely unjustified.

I hope the enclosed memorandum, giving the facts about the appointment, will be of use to you. I don't think my name or that of the Department should be mentioned at the present time in this connection. However, if you should wish a formal statement from me later on, please let me know.

TOM C. CLARK
*Attorney General*

## Appointment of Mr. Justice Jackson as Representative and Chief of Counsel of the United States in the Prosecution of the Axis War Criminals in Europe

By Executive Order 9547 of May 2, 1945, 10 Fed. Reg. 4961, President Truman designated Robert H. Jackson, Associate Justice of the Supreme Court of the United States, to act as the representative of the United States and as its Chief of Counsel in preparing and prosecuting charges of atrocities and war crimes against such of the leaders of the European Axis powers and their principal agents and accessories as the United States might agree with any of the United Nations to bring to trial before an International Military Tribunal. The appointment carried with it no additional compensation.

This appointment was made pursuant to the agreement entered into on August 8, 1945, by the United States, Great Britain, Russia, and France for the prosecution and punishment of the major war criminals of the European Axis. 59 Stat. 1544, 82 U.N.T.S. 280. The Charter of the International Military Tribunal annexed to and made a part of that agreement provides (art. 14) that each signatory power shall appoint a Chief Prosecutor for the investigation of the charges against and the prosecution of major war criminals, and that the Chief Prosecutors shall act as a committee for the following purposes:

> (a) to agree upon a plan of the individual work of each of the Chief Prosecutors and his staff,
>
> (b) to settle the final designation of major war criminals to be tried by the Tribunal,
>
> (c) to approve the Indictment and the documents to be submitted therewith,
>
> (d) to lodge the Indictment and the accompanying documents with the Tribunal,
>
> (e) to draw up and recommend to the Tribunal for its approval draft rules of procedure, contemplated by Article 13 of this Charter.

59 Stat. 1546, 1549, 82 U.N.T.S. 284, 292.

The Charter also provides (art. 15) that the Chief Prosecutors shall individually, and acting in collaboration with one another, perform the following duties:

> (a) investigation, collection and production before or at the Trial of all necessary evidence,

(b) the preparation of the Indictment for approval by the Committee in accordance with paragraph (c) of Article 14 hereof,

(c) the preliminary examination of all necessary witnesses and of the Defendants,

(d) to act as prosecutor at the Trial,

(e) to appoint representatives to carry out such duties as may be assigned to them,

(f) to undertake such other matters as may appear necessary to them for the purposes of the preparation for and conduct of the Trial.

59 Stat. at 1549, 82 U.N.T.S. at 292–93.

It is hardly necessary to call attention to the fact that the undertaking involved—the indictment, prosecution, and trial of the chief war criminals in Europe—is of supreme importance to the whole civilized world. Nor is it necessary to point out that this grave undertaking is unique in the history of judicial procedure.

It was, therefore, of the utmost importance that the Chief of Counsel for the United States be an exceedingly able man, of wide experience, of exceptional physical vigor, of peculiar aptitude for the task, and of great legal attainments. It was equally important that the President of the United States should be entirely free to select that citizen of the United States who he felt was best qualified to perform the duties of this office.

It must be conceded that Mr. Justice Jackson is eminently qualified to discharge the duties and responsibilities of the task assigned him. His record of accomplishment as Chief Prosecutor for the United States in the trial of war criminals now being conducted at Nuremburg speaks for itself. His record in this respect is, in fact, a complete justification of his appointment.

The appointment of Justice Jackson for this special mission is not only without legal objection, but it is also supported by ample precedent. It is a well-established practice for the President to secure the services of federal judges in connection with important national and international matters. This practice arose long ago. It is well illustrated by the following examples: Chief Justice Jay served as special envoy to England at the request of the President. Chief Justice Ellsworth served as special envoy to France. Chief Justice Fuller twice acted as an arbitrator of international disputes. Circuit Judge Putnam served as a commissioner under a conference with Great Britain relating to the seizure of vessels in the Bering Sea. More recently, Justice Roberts served as chairman of the board appointed by President Roosevelt to investigate the Pearl Harbor disaster of December 7, 1941.